UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANE DOE I, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO:   16-14876** |
| **JUANA MARINE-LOMBARD, in her Official Capacity as Commissioner, Louisiana Office of Alcohol and Tobacco Control** | **SECTION: "J" (4)** |

## ORDER AND REASONS

Before the Court is a **Motion for Leave of Court to Serve Subpoena Returnable to the Court for In Camera Inspection and/or to File Police Report Under Seal (R. Doc. 29)** filed by Defendant Juana Marine-Lombard, in her official capacity as Commissioner, Louisiana Office of Alcohol and Tobacco Control ("Defendant") seeking an order from the Court to permit early discovery so that the Defendant can issue a subpoena to the Louisiana State Police for the production of its report concerning the death of Jasilas Wright for *in camera* inspection or for the issuance of a protective order and the filing of the report under seal. . The motion is opposed. R. Doc. 38. The motion was submitted on November 9, 2016 and heard with oral arguments that same day. For the following reasons, the motion is **DENIED**.

### I.     Background

The Plaintiffs, Jane Doe I, Jane Doe II, and Jane Doe III,[1] filed his action in the District Court on September 22, 2016 under 42 U.S.C. §§ 1983 and 1988 to redress deprivation under color of state law of rights secured by the United States Constitution and the Louisiana Constitution. R. Doc. 1, p. 1. In particular, the Plaintiffs are erotic dancers who work and reside in Louisiana and

---

[1] The Plaintiffs have filed their complaint pseudonymously and have filed a motion to proceed pseudonymously (R. Doc. 2). At this time, the District Court has not yet ruled on that motion.

1

are all under the age of twenty-one. R. Doc. 1, p. 5-9. Plaintiffs are challenging Act No. 395,[2] which amended Louisiana Revised Statutes §§ 26:90(E) and 286(E) to read:

> § 90. Acts prohibited on licensed premise; suspension or revocation of permits
>
> E. Subject to the provisions of Subsection D of this Section, entertainers whose breasts or buttocks are exposed to view shall perform only upon a stage of at least eighteen inches above the immediate floor level and removed at least three feet from the nearest patron and shall be twenty-one years of age or older.
>
> § 286. Acts prohibited on licensed premises; suspension or revocation of permits
>
> E. subject to the provisions of Subsection D of this Section, entertainers whose breasts or buttocks are exposed to view shall perform only upon a stage of at least eighteen inches above the immediate floor level and removed at least three feet from the nearest patron and shall be twenty-one years of age or older.

2016 La. Acts 395. The law went into effect on August 1, 2016. La. Stat. Ann. §§ 26:90(E) & 286(E) (2016). The Plaintiffs argue that the amended statute introduces age restrictions for erotic dancing, prohibiting adults who have reached the age of majority in Louisiana from performing as erotica dancers until they reach of age of twenty-one. R. Doc. 1, p. 3.

The Plaintiffs allege that Act. No. 395 forced them to stop working as erotic dancers. Because of this, the Plaintiffs aver that Act No. 395 violates their rights under the First Fourteenth Amendments to the United States Constitution, Article I, § 10(1) of the United States Constitution, and Article I, §§ 2, 3, & 23 of the Louisiana Constitution.

The Plaintiffs have filed a Motion for Preliminary Injunction. R. Doc. 16. On September 30, 2016, the District Court entered a Temporary Restraining Order, temporarily restraining the Defendant in her official capacity from enforcing or causing any other state actor to enforce Act. No. 395 anywhere within the State of Louisiana pending further order from the Court. R. Doc. 10. On October 17, 2016, the District Court granted in part and denied in part the Defendant's

---

[2] 2016 La. Acts. 395.

Emergency Motion for Extension of Time and for Status Conference, resetting the submission date on the Motion for Preliminary Injunction for November 21, 2016 and ordering Defendant's opposition to be filed no later than November 14, 2016. R. Doc. 19.

On November 3, 2016, the Defendant filed the instant Motion for Leave of Court to Serve Subpoena Returnable to the Court for In Camera Inspection and/or to File Police Report Under Seal (R. Doc. 29) and a Motion to Expedite (R. Doc. 30) the hearing on that motion. The Court granted the motion to expedite, setting the motion to go under submission on November 9, 2016. R. Doc. 36.

In the instant motion, the Defendant seeks a court order to permit early discovery of a police report concerning the death of Jasilas Wright ("Wright"), who was brutally killed at the hands of her boyfriend also referred to as her pimp. R. Doc. 29-1, p. 1. The Defendant also seeks to have the report either viewed *in camera* by the Court or filed under seal. *Id.* During oral argument, the Defendant clarified her request. The Defendant seeks the Court's permission to have a subpoena issued to the Louisiana State Police for the police report to be either delivered to the Court for *in camera* review or filed under seal into the Court's record such that neither party would have an opportunity to review the report. In essence, the Defendant requests an order to obtain the police report and place it before the District Court for its own evaluation and consideration.

The Defendants argue that the police report contains the best source of information about Wright's death, including information about her age, involvement with erotic dancing at strip clubs, Adam Littleton's recruitment of Wright to become a prostitute while working at a strip club, and the underlying causes of her death. *Id.* at p. 3. The Defendant argues that this information is relevant to its opposition to the Plaintiffs' Motion for Preliminary Injunction because Wright's death was central to the passage of Act No. 395 and central to justifying the Act's design to combat

the negative secondary effects associated with erotic dancing at strip clubs serving alcohol, including human trafficking, prostitution, illegal drug usage, other crimes, and lewd and immoral conduct. *Id.* at 2-3. The Plaintiffs oppose the motion, arguing that the Defendant has not demonstrated good cause for expedited discovery and that the Defendant's request creates practical problems, including the Plaintiffs' ability to challenge the information contained therein and concerns about state investigative records being subject to unrelated civil federal cases. R. Doc. 38, p. 7.

## II.     **Standard of Review**

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery before the parties have conferenced as required by Rule 26(f)" unless authorized by the Rules or Court order. *See Republic Bus. Credit, LLC v. Greystone & Co., Inc.*, No. 13-5535, 2013 WL 6388657, at *4 (E.D. La. Dec. 6, 2013). While the Federal Rules of Civil Procedure do not provide a standard to guide the Court's exercise of discretion in allowing expedite discovery to occur, courts have generally utilized the "good cause" standard when addressing this issue. *BKGTH Productions, LLC v. Does 1-20*, No. 13-5310, 2013 WL 5507297 at *4 (E.D. La. Sept. 30, 2013) (citation omitted). "The good cause analysis considers factors such as the 'breadth of the discovery request, the purpose for requesting expedited discovery, the burden on the [producing party] to comply with the requests and how far in advance of the typical discovery process the request was made.'" *Id.* (quoting *St. Louis Group, Inc. v. Metals & Additives Corp., Inc., et al,* 275 F.R.D. 236, 239 (S.D. Tex. 2011)). Moreover, under the good cause standard, the burden is on the party seeking expedite discovery, and the requesting party must "narrowly tailor their requests in scope to the necessary information they seek" *Id.* at *5 (citations omitted).

However, even if the requesting party demonstrates good cause, discovery still has its "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . ." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

### III.   Analysis

The Defendant seeks an order from the Court permitting expedite discovery of a police report concerning the death of Wright. R. Doc. 29. The Defendant argues that the police report is the best source of information concerning Wright's death, including information about her age, involvement with erotic dancing at strip clubs, Adam Littleton's recruitment of Wright to become a prostitute while working at a strip club, and the underlying causes of her death. R. Doc. 29-1, p. 3.

However, the Plaintiffs argue that the Defendant has not met her burden to demonstrate good cause for the expedite discovery. R. Doc. 38, p. 3. In particular, the Defendant argues that the surrounding circumstances weigh against a finding of good cause. They argue that the police report was never considered by the Louisiana Legislature in consideration of Act No. 395 and that Wright's death was only mentioned in an isolated reference. *Id.* at p. 4-5. While the Defendant does not address the good cause standard, the Defendant's argument appears to be that Wright's death was an animating cause of Act No. 395 and therefore the information related to that death is relevant to demonstrate the negative secondary effects of erotic dancing in connection with the Defendant's opposition to the motion for preliminary injunction.

Here, the Court finds that the Defendant has demonstrated good cause. The Defendant seeks the expedited discovery to arguably prepare its opposition to the Plaintiffs' motion for preliminary injunction. Certainly, this purpose for the amendment demonstrates good cause because the normal course of discovery would not provide enough time to conduct the discovery prior to the Court's consideration of the motion for preliminary injunction. *See* Advisory Committee Notes 1993 Amendment to Federal Rule of Civil Procedure 26(d) (expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction."). Moreover, the Defendant's request is not overly broad nor would place an undue burden on the producing party to comply with the requests; therefore, the balance of factors weighs in favor of finding good cause for expedited discovery. *See BKGTH Productions*, 2013 WL 5507297, at *4.

While the Defendant has demonstrated good cause for expedited discovery, the discovery request is still bound by the scope of discovery laid out in Rule 26(b)(1). In particular, the request must be relevant to a claim or defense. The Defendant argues that the request is relevant because

6

Wright's death was central to the passage of Act No. 395 and central to justifying the Act's design to combat the negative secondary effects associated with erotic dancing at strip clubs serving alcohol, including human trafficking, prostitution, illegal drug usage, other crimes, and lewd and immoral conduct. R. Doc. 29-1, 2-3. In support of that argument, the Defendant has provided four excerpts of testimony concerning Wright's death. However, three of the testimonies provided appear to have occurred before the New Orleans City Counsel rather than the Louisiana Legislature. R. Docs. 29-2, 29-3, 29-5. While the Defendant argues that the testimony influenced the passage of a city ordinance that in turn encouraged the passage of Act No. 395, the Court is skeptical that such an attenuated connection makes the details of a police report relevant to the current inquiry.

The only testimony on point was State Representative Karen Peterson's comments during a Judiciary Committee Debate, wherein she comments briefly on Wright's death as a motivating factor for the law and on the impropriety of calling Adam Littleton her "pimp/boyfriend." R. Doc. 29-4. However, during oral arguments, the Plaintiffs pointed out that Wright's death was not discussed during the actual floor debate of the Louisiana State Legislature concerning Act No. 395. Additionally, the Court questions what relevance the details of Wright's murder derived from the police report could have in aiding the District Court's consideration of the underlying Motion for Preliminary Injunction. This concern is only heightened by the fact that the Louisiana Legislature did not review or consider the police report that the Defendant now seeks to have produced. R. Doc. 29-1, p. 5, n.1.[3] As the Court noted during oral arguments, the 2015

---

[3] The Plaintiffs argue that the information would be irrelevant to the Court's consideration of the motion for preliminary injunction because the Court should not consider evidence that was not actually considered by the enacting legislative body. R. Doc. 38, p. 5. Plaintiffs cite *SDJ, Inc. v. City of Houston*, 837 F.2d 1268 (5th Cir. 1988) and *Illusions—Dallas Private Club, Inc. v. Steen*, 482 F.3d 299 (5th Cir. 2007). And, indeed, these cases demonstrate that the government must demonstrate it's substantial interest with record evidence that it considered prior to enactment.

7

Amendemnts to the Federal Rules of Civil Procedure removed the "reasonably calculated to lead to the discovery of admissible evidence" from the scope of discovery. Instead, the scope requires that the Court find that the discovery is actually relevant to a claim or defense. Here, the Court does not find that the details of the police report would be actually relevant to advancing the Defendant's arguments in opposition to the Motion for Preliminary Injunction.

In addition to the suspect relevance of the police report, the requested discovery is denied because the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). As the Defendant acknowledges (R. Doc. 29-1, p. 3-4), police files of on-going investigations are subject to a qualified Law Enforcement Privilege. *See In re United States Dept. of Homeland Sec.*, 459 F.3d 565, 568-69 (5th Cir. 2006). Moreover, the Fifth Circuit has found no error where the court "declined to require the production of files. . .on the ground that the contents were privileged and that the files concerned parts of a homicide investigation which was then still open, the contents

---

*SDJ, Inc.*, 837 F.2d at 1274 ("a city may establish its substantial interest in the regulation by compiling a record with evidence that it may be reasonably believed to be relevant to the problem that the city addresses. We do not ask whether the regulator subjectively believed or was motivated by other concerns, but rather whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion.") (internal quotations omitted); *See also, Illusions*, 482 F.3d at 312-13. However, the Defendant argues that while the government must present some pre-enactment evidence considered by the enacting body, those cases do not exclude supporting evidence not considered by the enacting body. R. Doc. 29-1. And, there appears to be some merit to this argument. *See RVS, LLC v. City of Rockford*, 361 F.3d 402, 411 n.6 (7th Cir. 2004) ("While the Supreme Court has not definitively addressed the issue, our Court has permitted municipalities to make a record for trial with evidence that it may not have considered when it enacted its ordinance."); *Ctr. for Fair pub. Policy v. Maricopa Cty., Ariz.*, 336 F.3d 1153, 1166 n.3 (9th Cir. 2003) ("However, in *Alameda Books* the Supreme Court specifically contemplated that the state could indeed rely on post-enactment evidence in support of its position, *but only* if the plaintiffs succeed in casting doubt on the state's rationale."). Nonetheless, given that the Defendant has not properly demonstrated how the details of the police report would be relevant, the Court need not attempt to address this issue nor attempt to suggest what would be appropriate for the District Court to consider in its analysis.

of which were highly confidential." *Brown v. Thompson*, 430 F.2d 1214, 1215 (5th Cir. 1970). Here, the Court similarly declines to require the production of a police report of—as the Defendant acknowledges—an on-going prosecution of the murder of Wright and where the defendant, Adam Littleton, may be subject to additional charges/prosecution for crimes such as human trafficking. R. Doc. 29-1, p. 2. Moreover, the argument presented by the Defendant in its exhibits presented to the Court demonstrate that much of the information that the Defendant seeks might be available to the public through some more convenient means, such as newspaper articles. R. Doc. 41-2, p. 2.

During oral arguments, the Defendant further acknowledged that the information was made available to her from police officers involved in the case. When the Court questioned why she could not secure the information from those officers rather than compelling the production of a police report, Defendant's counsel responded that the police officers would not provide an affidavit or testify concerning an on-going investigation/prosecution, which only underscores the dangers/impropriety of requiring the production of the police report. Given that the information is available from more convenient sources, the Court will not allow this intrusion into an on-going criminal investigation/prosecution. Therefore, in addition to finding the request irrelevant, the Court will deny the discovery request because more convenient and less burdensome sources exist to obtain the information sought.

Finally, the Court also finds the unorthodox nature of the Defendant's request troubling. The Defendant is asking the Court to permit her to issue a subpoena returnable to the District Court for the Louisiana State Police for its police report in connection with an on-going prosecution/investigation so that the District Court may have the police report during its consideration of the motion for preliminary injunction. As such, the requests not only envisions that the Defendant would not see the police report, but the Defendant's request also prohibits the

Plaintiffs from seeing the police report. As such, the Plaintiffs would be unable to: challenge the assertions or conclusions contained in the report; question the sources of information and/or witnesses identified in the report; or object to the admissibility of any portions of police report. Such a course of action would certainly encroach upon the Plaintiff's due process rights to challenge the evidence presented to the Court.

Moreover, the Defendant's request seems to be aimed at having the Court take judicial notice of the information contained in the police report. Fed. R. Evid. 201. However, before a Court may take judicial notice of information, the information must be "generally known within the trial court's territorial jurisdiction…or can be accurately and readily determined from sources *whose accuracy cannot reasonably be questioned*." Fed. R. Evid. 201(b) (emphasis added); s*ee also Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). Police reports—which may contain witness statements and hearsay, *see Randle v. Tregre*, 147 F. Supp. 3d 581, 596-98 (E.D. La. 2015)—are certainly not the type of unquestionable source of information envisioned by Rule 201 and are not an appropriate source for judicial notice. *See Purdie v. Brown*, No. 14-8490, 2015 WL 6741875, at *4 (S.D.N.Y. Nov. 3, 2015) ("Defendants have not explained how the police report contains facts that are of common knowledge or that are derived from an unimpeachable source."). *C.f. Rankin v. Majikes*, No.14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014) (quotation omitted) ("More importantly, however, is that even if judicial notice is taken of these documents, a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted."). Given these concerns, the Court further finds the Defendant's request to be improper.

## IV.     Conclusion

Accordingly,

**IT IS ORDERED** that **Motion for Leave of Court to Serve Subpoena Returnable to the Court for In Camera Inspection and/or to File Police Report Under Seal (R. Doc. 29)** is **DENIED**. The details contained in the police report sought are likely not relevant to the Defendant's claims/defense. Additionally, the information is likely available from a more convenient source compared to the intrusion into an on-going criminal prosecution/investigation.

New Orleans, Louisiana, this 10th day of November 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**