UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANE DOE I, ET AL.                          CIVIL ACTION

VERSUS                                      NO: 16-14876

JUANA MARINE-LOMBARD                        SECTION: "J"(4)

## ORDER AND REASONS

Before the Court is Plaintiffs' *Motion for Preliminary Injunction* **(Rec. Doc. 16)**. The briefing for this motion was extensive, and included: the motion **(Rec. Doc. 16)** filed by Jane Doe I, Jane Doe II, and Jane Doe III; two oppositions thereto, one (Rec. Doc. 47) filed by Defendant Juana Marine-Lombard, in her Official Capacity as Commissioner, Louisiana Office of Alcohol and Tobacco Control ("Commissioner Marine-Lombard"), and another (Rec. Doc. 49) filed by Intervenor Jeff Landry, Attorney General for the State of Louisiana ("Intervenor"); and a reply (Rec. Doc. 53) filed by Plaintiffs. The oppositions (Rec. Docs. 47 and 49) filed by Commissioner Marine-Lombard and Intervenor (hereinafter, referred to collectively as the "State") each address different arguments made by Plaintiffs and read as one single opposition.

Plaintiffs argue that they are likely to succeed on the merits of the following claims: 1) Act No. 395 violates Plaintiffs' rights to free expression; 2) the Act is unconstitutionally overbroad; 3) the Act is unconstitutionally vague; 4) the Act violates the Equal

1

Protection Clause; and 5) the Act violates Plaintiffs' due process rights. Because Plaintiffs have made a clear showing that they are entitled to the relief they request on grounds that Act No. 395 is unconstitutionally overbroad and unconstitutionally vague, the Court finds that the *Motion for Preliminary Injunction* **(Rec. Doc. 16)** should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from an Act passed by the Louisiana legislature and signed into law by the Governor of Louisiana, John Bel Edwards. On or about June 5, 2016, Governor Edwards signed into law Act No. 395. This Act changed the substance of two statutes found within the Louisiana Alcoholic Beverage Control Law, which is Louisiana's regulatory scheme for the sale and consumption of alcohol. *See* La. Rev. Stat. § 26:1; *Louisiana v. Larson*, 94-1237, p. 7 (La. 4/10/95); 653 So. 2d 1158, 1163. More specifically, Act No. 395 amended and reenacted statutes found within § 26:90 and § 26:286, both of which are provisions governing "Acts prohibited on licensed premises."[1] The newly amended language of § 26:90(E) and § 26:286(E) introduces age-based restrictions for live entertainers on premises licensed to serve alcohol. *See also* § 26:90(D) and § 26:286(D) (prohibiting certain

---

[1] La. Rev. Stat. § 26:90 and 26:286 are very similar provisions. The major difference between them is that § 26:90 regulates retail dealers who sell or serve alcoholic beverages, while § 26:286 regulates retail dealers who sell or serve "beverages of low-alcoholic content." *See* La. Rev. Stat. § 26:286(A)(1)(a).

acts from being performed on licensed premises).  Both statutes read as follows:

> Subject to the provisions of Subsection D of this Section, entertainers whose breasts or buttocks are exposed to view shall perform only upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest patron and shall be twenty-one years of age or older.

La. Rev. Stat. § 26:90(E) and § 26:286(E) (effective Aug. 1, 2016).[2]  Plaintiffs' complaint alleges that the effect of the amendment was to create an age restriction for erotic dancing that did not previously exist. The complaint further alleges that prior to enactment of Act No. 395, a person only needed to be eighteen years old to be an erotic dancer in Louisiana.

Act No. 395 became effective on August 1, 2016.  Shortly thereafter, the Louisiana Office of Alcohol and Tobacco Control (ATC), the agency tasked with enforcing Act No. 395, began enforcing the Act throughout Louisiana, except for the City of New Orleans ("New Orleans").  Instead, the ATC planned to begin enforcing Act No. 395 in New Orleans on October 1, 2016.

---

[2] Prior to Enactment of Act 395, § 26:90(E) stated:

> Subject to the provisions of Subsection D of this Section, entertainers whose breasts or buttocks are exposed to view shall perform only upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest patron.

La. Rev. Stat. § 26:90(E) (2010) (*amended* by Act No. 395).  Section 26:286(E) was identical to section 26:90(E), except its opening phrase was: "Subject to the provisions of Subparagraph(b)(i) of Subsection D of this Section, . . . ." § 26:286(E) (2010) (amended by Act No. 395).

Three erotic dancers who are under the age of twenty-one, but who are eighteen or older, filed a complaint on September 22, 2016 against Commissioner Marine-Lombard, in her Official Capacity as Commissioner of the ATC requesting injunctive and declaratory relief. (Rec. Doc. 1 at 19). All three Plaintiffs are women who are residents of Louisiana and who were employed as erotic dancers prior to the enforcement of Act No. 395. Plaintiffs are twenty, nineteen, and eighteen years of age, respectively. Two of the three Plaintiffs reside in New Orleans, while the other is a resident of Baton Rouge. Two of the Plaintiffs were employed as erotic dancers in Baton Rouge. These Plaintiffs allege that when Act No. 395 became effective on August 1, 2016, they were forced to stop working as erotic dancers, and instead worked as "shot girls," which the Plaintiffs allege is a less lucrative position. One of the Plaintiffs is employed as an erotic dancer in New Orleans.

Plaintiffs allege that Act No. 395 violates the First and Fourteenth Amendments to the United States Constitution and Article I, sections 2, 3, and 7 of the Louisiana Constitution. The complaint also alleges that Act No. 395 violates Plaintiffs' substantive due process rights under the Due Process Clause of the Fourteenth Amendment and their rights to contract under Article I, section 10(1) of the United States Constitution and Article I, section 23 of the Louisiana Constitution. Plaintiffs bring a

facial challenge to the constitutionality of Act No. 395 and request a declaration that Act No. 395 violates the United States and Louisiana Constitutions.  Plaintiffs also filed a *Motion for Preliminary Injunction* (Rec. Doc. 4-2) and *Motion for Expedited Consideration* (Rec. Doc. 5) requesting that the Court grant a preliminary injunction precluding Commissioner Marine-Lombard from enforcing Act No. 395 in New Orleans.  Construing the *Motion for Preliminary Injunction* (Rec. Doc. 4-2) as a request for a Temporary Restraining Order, this Court temporarily restrained Commissioner Marine-Lombard from enforcing Act No. 395 anywhere within the state of Louisiana pending further Order of this Court on September 30, 2016.  (Rec. Doc. 10 at 2-3.)

On November 3, 2016, Jeff Landry, in his official capacity as Attorney General of the State of Louisiana ("Intervenor") intervened in this matter.  On November 14, 2016, both Commissioner Marine-Lombard and Intervenor (hereinafter, referred to collectively as the "State") filed separate oppositions to Plaintiffs' *Motion for Preliminary Injunction*.  Commissioner Marine-Lombard's opposition (Rec. Doc. 47) and Intervenor's opposition (Rec. Doc. 49) each address different arguments made in Plaintiffs' *Motion for Preliminary Injunction* and are read as a single opposition.

**LEGAL STANDARD**

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

None of the four requirements has a fixed quantitative value. *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975). Therefore, in applying the four-part test, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* This requires "a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief." *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984).

The decision to grant or deny a preliminary injunction is discretionary with the district court. *Miss. Power & Light Co. v.*

*United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Suehs*, 692 F.3d at 348. Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

The purpose of a preliminary injunction is limited to preserving the relative positions of the parties until a trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* For this reason, the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at trial on the merits. *Id.*

<u>**DISCUSSION**</u>

**1. Likelihood of Success on the Merits**

**a. Content-Based or Content-Neutral Restriction**

The Court must first consider whether Act No. 395 is a content-based or content-neutral restriction on Plaintiffs' First Amendment Rights.  When the government's interest is to suppress

7

the content of the speech, then strict scrutiny is applied to the government action. *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006). Content-based restrictions on speech "presumptively violate the First Amendment," *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986), and must be narrowly tailored to promote a compelling government interest. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). However, content-neutral restrictions on speech, namely those where the "government's predominate purpose is unrelated to the suppression of expression," are subject to intermediate scrutiny. *Fantasy Ranch*, 459 F.3d at 554 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

Plaintiffs argue that Act No. 395 is a content-based restriction because it completely bans a group of people – women ages eighteen to twenty years old – from engaging in the protected expression of nude erotic dancing. (Rec. Doc. 16-1 at 9.) Therefore, Plaintiffs argue that Act No. 395 is not just a time, place, and manner restriction, but rather a total restriction of a protected form of expression. *Id.* Furthermore, Plaintiffs argue that the Louisiana legislature passed Act No. 395 with the intent of suppressing protected First Amendment expression, and not to avoid secondary effects of erotic dancing. (Rec. Doc. 53-2 at 6-7.) The State counters that Act No. 395 does not constitute a total ban on the protected expression of erotic dancing for

eighteen to twenty year-old women because they can still dance erotically in a bikini in liquor-licensed establishments or dance completely nude in establishments that do not serve alcohol. (Rec. Doc. 47 at 27.)

Nude dancing is expressive conduct that "falls only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Therefore, alcohol regulations aimed at combating the harmful secondary effects of nude dancing are routinely reviewed under intermediate scrutiny. *See Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 996 (11th Cir. 1998) (holding that city ordinance prohibiting nudity in establishments serving alcohol was content-neutral and should be reviewed under intermediate scrutiny); *see also Illusions-Dallas Private Club, Inc.v. Steen*, 482 F.3d 299, 307 (5th Cir. 2007) ("Courts routinely apply intermediate scrutiny to alcohol regulations of [sexually oriented businesses], and we do so here.")

Because a "statute's predominant purpose determines the level of scrutiny," it is necessary to identify the predominant purpose behind Act No. 395. *See Illusions-Dallas Private Club, Inc.*, 482 F.3d at 308. Plaintiffs point out that "a statute's predominant purpose must be determined with reference to events contemporaneous with the enactment." *Id*. Therefore, Plaintiffs argue that Act No. 395, which has no statutory preamble setting forth its purpose, fails to identify a content-neutral predominant

purpose.    Instead, Plaintiffs argue that the Louisiana legislature's true purpose in passing Act No. 395 was to prevent eighteen to twenty year-old women from nude erotic dancing when "there is a better way of living." (Rec. Doc. 53-2 at 5.) However, neither a preamble nor legislative history is required to determine the existence of a content-neutral purpose. *See Illusions-Dallas Private Club, Inc.*, 482 F.3d at 310.  The Fifth Circuit has held that a regulation found in the Texas Alcoholic Beverage Code was subject to intermediate scrutiny when the regulation's "plain text and its place within the [code]" demonstrated that its predominant purpose was unrelated to suppression of speech.  *Illusions-Dallas Private Club, Inc.*, 482 F.3d at 308; *see also Baby Dolls Topless Saloon, Inc. v. City of Dallas*, 295 F.3d 471, 484-85 (5th Cir. 2002) (analyzing a city code amendment requiring performers to wear bikini tops to avoid "sexually oriented business" classification as a content-neutral regulation).  Similarly, the plain text of Act No. 395 and its placement within the Louisiana Alcoholic Beverage Control Law demonstrate that this is a content-neutral restriction.

### b. Application of Intermediate Scrutiny

The intermediate scrutiny applied to content-neutral speech restrictions comes from a test set out by the Supreme Court in

*United States v. O'Brien*,[3] 391 U.S. 367 (1968).  The *O'Brien* test

requires courts to consider whether: "(1) the regulation is within

_____

[3] The parties disagree about whether the Court should apply the *O'Brien* test, or a hybrid test laid out by the Seventh Circuit in *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702 (7th Cir. 2003).  The *Ben's Bar* court attempted to determine which Supreme Court standard it should apply to an adult entertainment liquor regulation.  *Id.* at 714.  *Ben's Bar* distinguished the tests used for zoning ordinances from the test used to analyze adult entertainment zoning ordinances. 316 F.3d at 713.  *Ben's Bar* concluded that the Supreme Court applies the *O'Brien* test to analyze the constitutionality of public indecency statutes. *Id.; see Pap's A.M.*, 529 at 289-90 (plurality opinion) (applying the *O'Brien* test to an ordinance that prohibited public nudity).  However, *Ben's Bar* noted that the Supreme Court "evaluates adult entertainment zoning ordinances as time, place, and manner regulations."  *Id.; see Alameda Books*, 535 U.S. at 440 (analyzing a zoning ordinance that prohibited multiple adult businesses in one building according to the standard that it must be "designed to serve a substantial government interest and do[es] not unreasonably limit alternative avenues of communication" (internal citations omitted)).  Because the statute at issue in *Ben's Bar* was different from both a zoning ordinance and a public indecency statute, the court decided upon a hybrid between the *O'Brien* test and the test laid out in *Alameda Books*.

The hybrid test employed by the *Ben's Bar* court for analyzing the constitutionality of a liquor regulation precluding the sale or consumption of alcohol on premises of adult entertainment establishments asks whether:

   (1) the State is regulating pursuant to a legitimate governmental power,
   (2) the regulation does not completely prohibit adult entertainment,
   (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments,  and
   (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available; or, alternatively, the regulation furthers an important or substantial government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest.

*Id.* at 722. (internal citations omitted) (line breaks added).

In *Illusions-Dallas Private Club, Inc. v. Steen*, the Fifth Circuit applied the *Ben's Bar* hybrid test to analyze the constitutionality of a law that prohibited sexually oriented businesses operating in dry political subdivisions from serving alcohol.  482 F.3d 299, 303 (5th Cir. 2007).  However, the court did not explicitly endorse the test.  *Id.* ("On appeal, neither party disputes the use of the hybrid test.  We therefore need not decide whether to adopt it in circumstances such as the one here.")  Thus, the parties here dispute which test is applicable to the instant matter.

Plaintiffs argue that because Act No. 395 is not a zoning ordinance, the *O'Brien* test is the appropriate vehicle for analyzing the Act.  The State

the constitutional power of the government; (2) it furthers an important governmental interest that is (3) unrelated to the suppression of speech; and (4) the incidental restrictions on speech are no greater than is essential to further the interest." *Illusions-Dallas Private Club, Inc.*, 482 F.3d at 311 (citing *O'Brien*, 391 U.S. at 376-77).  The State has the burden of proving these elements are satisfied. *Playboy Entm't Grp. Inc*, 529 U.S. at 816-17.  Plaintiffs do not contest that the State has the constitutional power to combat human trafficking and therefore do not argue that Act No. 395 fails to satisfy *O'Brien*'s first requirement that the State has the power to combat such an ill. (Rec. Doc. 16-1 at 14.)  Additionally, the Court has already concluded that Act No. 395 is unrelated to the suppression of speech and, thus, Act. No. 395 satisfies *O'Brien*'s third requirement. *See Horton v. City of Houston*, 179 F.3d 188, 194

---

disagrees, arguing that the Fifth Circuit's application of the hybrid model in *Illusions-Dallas Private Club* suggests that the court has adopted it for use in evaluating the constitutionality of alcohol regulations.

Ultimately, the different models for analyzing the variety of content-neutral First Amendment regulations is more academic than practically important. As the *Ben's Bar* court noted, it is "abundantly clear that the analytical frameworks and standards utilized by the [Supreme] Court in evaluating adult entertainment regulations, be they zoning ordinances or public indecency statutes, are virtually indistinguishable." *Ben's Bar*, 316 F.3d at 714.  The *Illusions-Dallas Private Club* court also acknowledged the similarity when it stated that "the result would be the same under either *Alameda Books* or *O'Brien*." 482 F.3d at 311.  Without further direction from Fifth Circuit, the Court applies *O'Brien*, satisfied that the similarities between the tests will lead to the same result either way.

(5th Cir. 1999) (holding that because a regulation was "on balance a content-neutral rule, the third prong of the *O'Brien* test [had] been satisfied"). The parties dispute the other two prongs of *O'Brien* and both will be discussed in turn.

  i.  Important or Substantial Governmental Interest

The State argues that Act No. 395 serves the substantial governmental interest of combatting negative secondary effects. (Rec. Doc. 47 at 35.) Regulations that attempt to mitigate the secondary effects of erotic dancing serve a substantial government interest. *See Pap's A.M.*, 529 U.S. at 296 ("The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important.") Secondary effects are distinguishable from the "primary effects of the expression, *i.e.*, the effect on the audience of watching nude dancing." *Id.* at 291. The Supreme Court has identified secondary effects as those "such as the impacts on public health, safety, and welfare, which . . . are 'caused by the presence of even one'" nude dancing facility. *Id.* (quoting *Renton*, 475 U.S. at 47-48). When the government argues that its regulation combats secondary effects, it must demonstrate that it has a reasonable basis for believing the conduct it aims to regulate leads to secondary effects. *See Pap's A.M.*, 529 U.S. at 313 (Souter, J. concurring in part, dissenting in part) ("[I]ntermediate scrutiny requires a regulating government to make

13

some demonstration of an evidentiary basis for the harm it claims to flow from the expressive activity, and for the alleviation expected from the restriction imposed.") However, the government is only required to provide "very little evidence" to support that proposition, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 451 (2002) (Kennedy, J., concurring in the judgment), and is only required to satisfy a "very light" evidentiary burden. *Illusions-Dallas Private Club, Inc.*, 482 F.3d at 313. In justifying the existence of secondary effects, the government "may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Fantasy Ranch Inc.*, 459 F.3d at 559 (quoting *Alameda Books*, 535 U.S. at 438). However, the government may not rely on "shoddy data or reasoning," and the government's "evidence must fairly support [its] rationale." *Alameda Books*, 535 U.S. at 426. "If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Id.*

When determining whether a regulation furthers an important governmental interest, the Court must make two different inquiries: "first, 'whether there is a substantial government interest . . . *i.e.* whether the threatened harm is real,' and,

14

second, 'whether the regulation furthers that interest.'" *Fantasy Ranch Inc.*, 459 F.3d at 558-59 (quoting *Pap's A.M.*, 529 U.S. at 300). Plaintiffs argue that Act No. 395 fails both inquiries. Thus, the first question is whether the threatened harm of increased human trafficking as a result of women under the age of twenty-one engaging in nude dancing is real. Plaintiffs do not dispute that human trafficking causes harm, but instead they argue that human trafficking is not a secondary effect of erotic nude dancing. (Rec. Doc. 16-1 at 15.) Plaintiffs aver that the State can only rely upon secondary effects of erotic nude dancing if those secondary effects actually exist. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1284 (10th Cir. 2002) ("A municipality only has a substantial or important governmental interest in combating the harmful secondary effects of nude dancing if those secondary effects are real.") The State counters that it has met its "very light" evidentiary burden for demonstrating the existence of secondary effects.

The Court must determine whether the State has presented "*some* evidence" that allowing eighteen to twenty year-olds to engage in completely nude erotic dancing leads to secondary effects. *See J&B Entm't, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 371 (5th Cir. 1998) (emphasis in original). Although Act No. 395 does not include a preamble setting forth the Act's purpose (Rec. Doc. 53-2 at 6), neither "a legislative record [n]or statutory preamble is

required to discern a content-neutral predominant purpose." *See Illusions-Dallas Private Club, Inc.*, 482 F.3d at 310. Instead, the Court may analyze the evidence presented by the State in its opposition to the instant motion for preliminary injunction. This evidence is not especially strong. For instance, the State provides the voluminous report from a statewide investigation conducted by the ATC between September and November 2015, called "Operation Trick or Treat." (*See* Rec. Doc. 47 at 9.) The Trick or Treat report is filled with detailed accounts of solicitation for prostitution and the sale and consumption of illicit narcotics that occurred in strip clubs and bars in Louisiana. (See Rec. Docs. 47-13, 47-15.) However, the report does not specifically isolate eighteen to twenty year-olds as victims. The State also devotes three pages in its brief to the death of Jasilas Wright, a nineteen-year-old woman who the State asserts was killed on June 10, 2016 after finishing a shift as an erotic dancer in a strip club on Bourbon Street. (Rec. Doc. 47 at 6-9.) The State avers that Ms. Wright transitioned from erotic dancing into prostitution, and was eventually killed by her pimp. *Id.* The State provides research to support the conclusion that Ms. Wright's experience of becoming a prostitute through her work as an erotic dancer is not an uncommon story. *Id.* at 8.

The State also attempts to connect Act No. 395 to a New Orleans City Council ordinance passed on January 7, 2016,

approximately five months before the passage of Act No. 395. (Rec. Doc. 47 at 5-17.) Ordinance No. 31,035 prohibits people under the age of twenty-one from "danc[ing], perform[ing], or entertain[ing] while unclothed or in such attire, costume, or clothing that does not completely and opaquely cover genitals, pubic region, buttock and female breast below a point immediately above the top of the areola." (Rec. Doc. 47 at 10-11.) Much of the evidence the State presents in support of its position that Act No. 395's purpose was to eliminate secondary effects of erotic dancing actually stems from the testimony supporting the passage of the New Orleans Ordinance No. 31,035. For instance, the State cites to testimony provided to the New Orleans City Council by Jim Kelly, the Executive Director of Covenant House New Orleans,[4] *Id.* at 11-14, Susanne Dietzel, Executive Director of Eden House New Orleans,[5] *Id.* at 16, Ron Lazell, a Lutheran pastor, *Id.* at 16. The State also relies upon comments made by New Orleans City Council members in support of Ordinance No. 31,035. *Id.* at 16-18. There is no indication that the Louisiana legislature relied on the evidence used to support Ordinance No. 31,035 when it passed Act No. 395.

---

[4] Covenant House New Orleans is a safe haven for homeless, runaway, and at-risk youth. (Rec. Doc. 47 at 11.)
[5] According to its website, Eden House New Orleans aims to empower women and transform their lives "by providing a safe home, coordinating recovery services, and through advocacy, outreach, education, and love." Eden House New Orleans home page, http://www.edenhousenola.org/.

This evidence is sufficient to meet the "reasonable belief" standard to satisfy the second prong of *O'Brien*.  The Louisiana legislature is not required to prove that it actually considered the evidence when adopting Act No. 395 so long as it provides sufficient evidence at this time.  *See J&B Entm't, Inc.*, 152 F.3d at 372 (stating that "ordinances regulating adult entertainment [are upheld] where the government has introduced sufficient evidence to justify the ordinance on the basis of preenactment legislative findings *or evidence adduced at trial*") (emphasis added).  When weighing this evidence, the Court does "not ask whether the regulator subjectively believed or was motivated by other concerns, but whether an objective lawmaker could have so concluded . . . ." *J&B Entm't, Inc.*, 152 F.3d at 373.  Furthermore, the State's reference to the testimony of proponents of the New Orleans Ordinance can be relied upon here.  *See Pap's A.M.*, 529 U.S. at 279 (noting that a "city need not conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects" (internal citations omitted)).  The testimony of leaders in New Orleans, a city which is in Louisiana and home to many of the state's adult entertainment venues, is sufficient to illuminate the secondary effect of nude dancing on women under the age of twenty-one.

Despite this evidence produced by the State, Plaintiffs argue that the Louisiana legislature's true animating forces behind Act

No. 395 were paternalistic and moralistic concerns about how women under the age of twenty-one should live, not the goal of reducing the secondary effect of human trafficking.  Plaintiffs argue that statements made by some Louisiana legislators advocating for the passage of Act No. 395 support this conclusion.  For instance, Representative Robby Carter stated the following during legislative debate on the Act:

> We need to do something to get these people [to] recognize that there's another way of living, you know. I wish there was something we could do to make [erotic dancers] go to church or something.

(Rec. Doc. 16-1 at 17.)  Additionally, Plaintiffs point to actions by some Louisiana legislators that suggest a lack of concern about human trafficking or other secondary effects.  For instance, Representative Kenny Havard proposed an amendment to the Act that would have required erotic dancers to be no older than twenty-eight years old and weigh no more than 160 pounds.  (Rec. Doc. 16-9 at 2.)  Also, when Representative Chad Brown voiced his concerns at the podium about the bill that would eventually became Act No. 395, other legislators approached the podium to leave dollar bills on it.  *Id.* at 33.  Plaintiffs point these antics out to demonstrate that multiple members of the Louisiana legislature did not take passage of Act No. 395 seriously and they were not motivated by a desire to end human trafficking.[6]

---

[6] Plaintiffs also direct the Court's attention to the following remarks made by Representative Beryl Amedee:

These incidents suggest that at least some members of the Louisiana legislature were not focused solely on the secondary effect of human trafficking while debating the bill that eventually became Act No. 395. Nevertheless, the "appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *J&B Entm't, Inc.*, 152 F.3d at 372 (quoting *Barnes*, 501 U.S. at 582 (Souter, J., concurring)). Thus, Act No. 395's constitutional validity is not compromised even if some members of the Louisiana legislature advocating for its enactment did so for reasons other than to curb the secondary effect of human trafficking. Furthermore, Representative Walt Leger, who introduced Act No. 395 in the Louisiana House of Representatives, stated that the Act was prompted by the ATC's Operation Trick or Treat investigation, noting that adult entertainment clubs are "haven[s] for

---

Now I know a lot of people in the room are thinking of their daughters, their younger sisters, perhaps, and they're thinking, "well I don't want my daughter doing that." But think about the girls who do these jobs, who don't have a dad, who don't have a big brother, who would say "I really don't want you doing that for a living, I don't want you in that environment." . . . [Act No. 395 is] about trying to protect people from being in environments where they're going to be taken advantage of

(Rec. Doc. 16-1 at 17.) Plaintiffs argue that these comments demonstrate a paternalistic motivation on the part of the Louisiana legislature. But this statement by Representative Amedee explicitly articulates a desire to protect vulnerable people from being preyed upon. Such a concern is in line with a goal of reducing human trafficking.

trafficking" and places where adults under the age of twenty-one are preyed upon. (Rec. Doc. 47 at 22.) Thus, there is little question that reducing human trafficking was an important motivation behind passing Act No. 395.

In *Essence, Inc. v. City of Federal Heights*, the Tenth Circuit analyzed the constitutionality of a statute similar to Act No. 395. 285 F.3d 1272, 1284 (10th Cir. 2002). The regulation in *Essence* was a city ordinance making it unlawful "for any person under twenty-one (21) years of age to be upon the premises of any adult entertainment establishment which offers live nude dancing." *Id.* at 1278 n.5. The Tenth Circuit applied the *O'Brien* test to the ordinance and held that the ordinance failed intermediate scrutiny.

Plaintiffs, for good reason, repeatedly refer to *Essence*. However, significant distinctions exist between *Essence* and the instant case. In *Essence*, the city produced "undisputed evidence establishing the existence of harmful secondary effects of nude dancing," so the court held that the city had demonstrated a substantial or important government interest. *Id.* at 1284. However, the city failed to "present any evidence that those younger than twenty-one are any more susceptible to those harmful effects." *Id.* at 1284 n.10. Although the city attempted to rely upon the affidavit of a former erotic dancer to demonstrate that its regulation would further its interest in combating secondary

effects, the city failed to timely offer this affidavit. *Id.* at 1288. Instead, the city presented the former erotic dancer's affidavit on the day of oral argument on cross-motions for summary judgment, nearly six months after the city filed its motion for summary judgment. *Id.* The district court denied the city's motion to supplement its reply brief with the affidavit. *Id.* The Tenth Circuit found that the district court did not abuse its discretion when it refused to consider the untimely affidavit. *Id.* Nevertheless, the court noted that the affidavit tended to prove that the age restriction would be effective at reducing the secondary effect.[7] *Id.* The upshot of *Essence* is that an age restriction will only satisfy *O'Brien* if the government demonstrates that "its interest in protecting those younger than twenty-one is substantial." *Id.* at 1284 n.10. Here, the State provides enough evidence to support the conclusion that it has a substantial interest in protecting women under the age of twenty-one from the threat of human trafficking.

Plaintiffs also argue that Act No. 395 fails to further the substantial government interest in curbing secondary effects. Plaintiffs argue that Act No. 395 puts women ages eighteen to twenty in even greater danger of victimization because it removes employment opportunities currently available to this population

---

[7] In *Essence*, the secondary effect at issue was underage drinking. *See Essence*, 285 F.3d at 1288.

and may increase the likelihood that young women fall prey to pimps on the streets of New Orleans (Rec. Doc. 16-1 at 17-18.) Additionally, Plaintiffs argue that the State cannot point to any evidence supporting the notion that banning eighteen to twenty year-olds from nude dancing will reduce the risk of human trafficking. *Id.*

These arguments must fail because they apply the wrong standard for determining whether Act No. 395 furthers a government interest. The State is not required to provide empirical data that Act No. 395 will actually succeed in curbing secondary effects, "at least 'not without actual and convincing evidence from plaintiffs to the contrary.'" *Baby Dolls Topless Saloons, Inc.*, 295 F.3d at 481 (quoting *Alameda Books*, 535 U.S. at 439 (plurality opinion)); *see also Richland Bookmart, Inc. v. Knox Cty.*, 555 F.3d 512, 524 (6th Cir. 2009) ("Nor are local governments required to demonstrate empirically that its proposed regulations will or are likely to successfully ameliorate adverse secondary effects.") State legislatures have the reasonable opportunity to experiment with solutions to ameliorate secondary effects of erotic dancing. *See id.* Act No. 395 is an attempt by the Louisiana legislature to do just that: to curb human trafficking. The Louisiana legislature had a reasonable basis for believing that human trafficking is a secondary effect of erotic dancing when it passed Act No. 395, and the State is not required to prove that

the Act will eradicate this problem.  Plaintiffs have not provided "actual and convincing evidence" that Act No. 395 will fail to curb the problem of human trafficking.  Accordingly, the second prong of *O'Brien* is satisfied.

ii.  Restriction on speech is greater than essential

Even when the government's purpose is legitimate and substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."  *Legend Night Club v. Miller*, 637 F.3d 291, 299 (4th Cir. 2011) (quoting *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)).  The fourth prong of the *O'Brien* test requires that a regulation "of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but [] need not be the least restrictive or least intrusive means of doing so."  *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  A regulation does not fail the fourth prong of *O'Brien* "simply because there is some imaginable alternative that might be less burdensome on speech."  *LLEH, Inc. v. Wichita Cty.*, 289 F.3d 358, 367 (5th Cir. 2002)  Further, "the validity of such regulations does not turn on a judge's agreement" that the regulation is the most appropriate method for promoting significant government interests, "[n]or does it turn on the degree to which those interests should be promoted."  *Id.*  A content-neutral regulation that promotes a substantial government interest is permissible so

24

long as the government interest "would be achieved less effectively absent the regulation." *Id.* (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

However, the overbreadth doctrine of the First Amendment permits a facial challenge when "a substantial number of [a statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Plaintiffs make such a challenge here, arguing that Act No. 395 bans more expressive conduct than is constitutionally permissible to further the Louisiana legislature's substantial governmental interest in reducing secondary effects. Therefore, the Court must determine whether Act No. 395 bans nudity in alcohol-serving establishments outside its plainly legitimate sweep.

"The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 237 (2002). To strike a statute down as facially overbroad, there must exist "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Hersh v. United States*, 553 F.3d 743, 762 (5th Cir. 2008) (quoting

*City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984)). As a result, facial challenges pursuant to the overbreadth doctrine should be granted "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "[W]here conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well." *Baby Dolls*, 295 F.3d 471, 482 (5th Cir. 2011) (quoting *Broadrick*, 413 U.S. at 615); *see also Virginia v. Hicks*, 539 U.S. 113, 124 (2003) ("[T]he overbreadth doctrine's concern with 'chilling' protected speech attenuates as the otherwise unprotected behavior that it forbids the state to sanction moves from pure speech toward conduct.") (internal citations omitted).

To avoid the "total judicial abrogation of even the legitimate regulation at the core of [an] overbroad statute," courts should construe a statute narrowly as long as it is fairly susceptible to a limiting construction. *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989). Thus, where a "literal reading of the text of [a statute] could support [] a seemingly absurd construction," the Fifth Circuit has "search[ed] for other evidence" to save the statute from infirmity. *Id.* However, the First Amendment "does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Stevens*, 559 U.S. at 480. The Court should avoid making a "frantic attempt to rescue"

a statute that fails to conform to constitutional requirements unless it is readily susceptible to a limiting construction. *Serafine v. Branaman*, 810 F.3d 354, 369 (5th Cir. 2016) (quoting *Stevens*, 559 U.S. at 481).

Plaintiffs argue that Act No. 395 is facially overbroad because it prohibits all adults under the age of twenty-one from engaging in nudity in establishments serving alcohol, irrespective of the reason for the nudity. (Rec. Doc. 16-1 at 21.) For instance, Plaintiffs argue that Act No. 395 would prohibit eighteen to twenty year-old actors from appearing in a theatric performance requiring nudity if the venue served alcohol. No evidence has been presented here that nudity in a theater or ballet production would heighten the risk of human trafficking, and such a restriction would result in protected speech being swept up by Act No. 395's breadth. The State responds that Act No. 395 is not overbroad, particularly because Plaintiffs have not demonstrated a realistic danger that recognized First Amendment protections would be compromised nor presented evidence that there are a substantial number of instances where the law cannot be applied constitutionally. (Rec. Doc. 49 at 5.) The State also argues that Act No. 395 is susceptible to a limiting construction because Commissioner Marine-Lombard interprets the Act as applying only to "strip clubs, topless bars, and similar adult entertainment

venues," and not to ballets, theaters, or other mainstream performances. (Rec. Doc. 49 at 6.)

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). Here, Act No. 395 states, inter alia, that "entertainers whose breasts or buttocks are exposed to view . . . shall be twenty-one years of age." (Rec. Doc. 16-1 at 21.) As described above, the State emphasizes in its briefing that Act No. 395 is designed to address the secondary effects of nude erotic dancing. It is clear from that briefing that Act No. 395 is specifically targeted at strip clubs and adult entertainment venues. Nevertheless, Act No. 395 was written in such a way as to prohibit any type of nudity by eighteen to twenty year-olds in establishments serving alcohol, whether in an adult entertainment venue, a ballet, or a play.

The Fourth Circuit addressed the overbreadth doctrine in *Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011). The regulation at issue in *Miller* prohibited nudity and certain sexual behavior in establishments licensed to sell alcohol. *Id.* at 295. In particular, employees of alcohol-serving establishments were precluded from "expos[ing] to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals." *Id.* Additionally,

certain behavior, such as "[t]he act of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation" or other illegal sexual acts were forbidden by the statute. *Id.* The plaintiffs argued that the statute was overbroad because it proscribed activity that included ballet, plays, and other mainstream productions of artistic merit. *Id.* The court agreed with the plaintiffs, stating:

> These restrictions "have the same prohibitory effect on much non-erotic dance—such as a ballet in which one dancer touches another's buttock during a lift—and all nudity or simulated nudity, however brief, in productions with clear artistic merit—such as the Pulitzer Prize winning play, *Wit*."

*Id.* at 299–300 (quoting *Geovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 516 (4th Cir. 2002) ("*Carandola I*"). The court also found the statute could not be preserved through a limiting construction. *Id.* at 300. It noted, "we must be careful not to encroach upon the domain of a state legislature by rewriting a law to conform it to constitutional requirements." *Id.* (internal citations omitted).

Another circuit court case, cited by the State, actually tends to support Plaintiffs' argument. In *Curves, LLC v. Spalding Cty., Ga.*, 685 F.3d 1284 (11th Cir. 2012), the Eleventh Circuit addressed an alcohol ordinance prohibiting nude dancing where alcohol was sold. The plaintiffs in *Curves, LLC* argued that the ordinance was unconstitutionally overbroad. *Id.* at 1290. However, the Eleventh

Circuit disagreed, noting that the ordinance had a "mainstream exception," which made the ordinance inapplicable to establishments, such as the theater, which may serve alcohol and occasionally feature nudity.[8] *Id.* at 1291.

No such exception exists in Act No. 395 to prevent the Act from prohibiting such "mainstream" nudity. However, the State includes an affidavit by Commissioner Marine-Lombard which states:

> 4. As I interpret Act No. 395, it does not apply to venues such as theatres, ballets, or other mainstream performance arts venues, whose primary purpose are events or productions and not the service of alcohol, and where the negative secondary effects would be unlikely to occur. To the best of my research and knowledge, there are no known links between performances at the ballet or stage plays and human trafficking, prostitution and other negative secondary effects.
>
> 5. Additionally, performance arts venues are licensed or permitted under a different set of regulations than those applicable to bars or clubs. Bars and clubs receive a "Class AG (Bar) Permit" from the State. Performance arts venues, however, receive an "AGE" license, meaning they have different rules and requirements that the regulations applying to bars and clubs.

(Rec Doc. 47-24 at 1-2.)

---

[8] The "mainstream exception" provided, in pertinent part, the following exceptions:

> Nothing contained in paragraph (f) of Section 6-1071 shall apply to the premises of any mainstream theater, which means a theater, concert hall, museum, educational institution or similar establishment which regularly features live performances which are not distinguished or characterized by an emphasis on the depiction, display, or description or the featuring of 'specified anatomical areas' or 'specified sexual activities' in that the depiction, display, description or featuring is incidental to the primary purpose of any performance.

*Curves, LLC*, 685 F.3d at 1291 n.10.

Plaintiffs have demonstrated a likelihood of success on their overbreadth claim because there is little doubt that Act No. 395 sweeps up a fair amount of constitutionally protected speech. Although overbreadth protections are more limited for conduct than speech, Act No. 395 still violates the First Amendment because it proscribes nudity for women younger than twenty-one in more settings than those where the risk of human trafficking is present. *See Hicks*, 539 U.S. at 118-19. Act No. 395 could result in eighteen to twenty year-olds being precluded from participating in theater or similar artistic productions if such participation entails nudity. Commissioner Marine-Lombard's affidavit does not change the result because first, she will not always be the ATC Commissioner and second, it is not the Court's role to rely on the interpretation of an enforcement agency when determining whether a statute is constitutional. *See Stevens*, 559 U.S. at 481.

The next step is to determine whether Act No. 395 is susceptible to a limiting construction. As discussed above, the Fifth Circuit has very recently weighed in on this subject in *Serafine v. Branaman*, 810 F.3d 354, 369 (5th Cir. 2016). The *Serafine* court declined to construe an overly broad statute narrowly, and there is reason to believe the court would come to the same conclusion here. *See id.* at 369 ("We decline to give [an overbroad statute] an additional extra-textual limiting construction in a frantic attempt to rescue it.") This Act, as

31

written, sweeps up too much protected speech to pass constitutional muster.[9]

c. **Vagueness**

A law may be unconstitutionally vague for either of two independent reasons. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010). First, a law is vague when "people of common intelligence must necessarily guess at its meaning and differ as to its application." *Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 830 (5th Cir. 1979) (internal citations omitted). Second, a law is vague when it "encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Either way, courts are to strike down laws that fail to sufficiently "define the line between legal and illegal conduct." *Munn v. City of Ocean Springs, Miss.*, 763 F.3d 437, 439 (5th Cir. 2014). Furthermore, "[w]here a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater

---

[9] The Court is aware of a similar case where the Sixth Circuit came to a different conclusion. In *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379 (6th Cir. 2008), the Sixth Circuit addressed an Ohio liquor regulation that prohibited any holder of an alcohol permit from allowing anyone on her premises from appearing in a state of "nudity" or from "engag[ing] in sexual activity." *Id.* The liquor regulation also defined nudity and sexual activity. *Id.* The district court concluded that the regulation might result in theater productions being precluded from displaying nudity. *Id.* at 384. But the Sixth Circuit noted that these productions could simply be displayed in places where alcohol would not be served or by performers wearing a G-string and pasties. *Id.* Additionally, the court distinguished between impermissible applications of the regulation being "conceivable" versus being "likely." *Id.* The court stated "any arguable impermissible application of the statute to citizens engaged in artistic expression amounts to no more than a fraction of [the statute's] reach." *Id.* at 385.

degree of specificity than in other contexts." *Cispes v. Fed. Bureau of Investigation*, 770 F.2d 468, 475 (5th Cir. 1985) (quoting *Smith v. Goguen*, 415 U.S. 566, 573 (1974)).

Plaintiffs argue that Act No. 395 is unconstitutionally vague in violation of the First and Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Louisiana Constitution of 1974.  In particular, Plaintiffs argue that the phrases "breasts or buttocks are exposed to view" in the Act fail to provide sufficient guidance as to how they should be interpreted and invite discretionary and arbitrary enforcement.  (Rec. Doc. 1 at 12.)  The State responds that Plaintiffs may not challenge Act No. 395 for vagueness because their conduct is clearly captured by the Act.  (Rec. Doc. 49 at 7-8.)  The State also argues that the Act is not vague because a common sense reading of it shows that the law is adequately precise.  *Id.* at 8.  Finally, the State notes that "breasts or buttocks are exposed" has been a part of both statutes prior to passage of Act No. 395, and argues that Plaintiffs have failed to demonstrate that the Act has led to confusion at any time before now.  *Id.* at 9.

The first question is whether Plaintiffs have standing to bring a vagueness challenge.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974); *see also United States v. Burke*, 577 Fed. App'x 338, 340 (5th Cir. 2014) ("Burke cannot

challenge the constitutionality of § 922(a)(1)(A) for vagueness, because his conduct was unquestionably prohibited by the statute.")   Two Plaintiffs, Jane Doe II and Jane Doe III, argue that Act No. 395's vague language has left them confused about precisely what attire they must wear as "shot girls." (Rec. Doc. 16-1 at 23.)   However, the attire for shot girls is covered by a completely different subsection of the statute than that which was amended by Act No. 395.   *Id.*   Act No. 395 amended subsection 26:90(E), which governs entertainers who expose their breasts and buttocks.   (Rec. Doc. 49 at 8.)   Shot girls are covered by subsection 26:90(B)(1),[10] which covers the "sale or service of alcoholic beverages," and which is not challenged by Plaintiffs here.   La. Rev. Stat. § 26:90(B)(1).   Accordingly, Janes Doe II and III lack standing to bring a vagueness claim on Act No. 395 by virtue of their current employment as shot girls who sell alcohol.

However, Plaintiffs also argue that Act No. 395 fails to precisely define the phrase "breasts or buttocks are exposed to view," and therefore leads to confusion about how much of an erotic dancer's buttocks or breasts must be "in view" to trigger the Act.

---

[10] Louisiana Revised Statute 26:90(B)(1) states that "Employment or use of any person in the sale or service of alcoholic beverages in or upon the licensed premises while such person is unclothed or in such attire, costume, or clothing as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva, or genitals."

(Rec. Doc. 16-1 at 22.)   The State argues that a common sense reading of the law shows that it is adequately precise.   (Rec. Doc. 49 at 8.)

Neither party directs the Court to authority that would help determine whether Act No. 395's reference to "breasts or buttocks are exposed to view" is unconstitutionally vague.   The State refers to a Virginia Supreme Court case holding that the word "buttocks" was not unconstitutionally vague.   *See Wayside Rest. v. City of Virginia Beach*, 208 S.E.2d 51, 52 (Va. 1974).   However, the statute at issue in *Wayside Restaurant* stated:

> As used in this Ordinance 'state of nudity' means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple.

*Id.* at 52 n.1.   The definition in *Wayside Restaurant* is much more descriptive than that in Act No. 395, especially with respect to its definition of the naked breast.

It is also noteworthy that Louisiana Revised Statute 26:90, the very statute that Act No. 395 amends, contains its own definition of nudity in a different subsection of the statute that is more descriptive than the newly revised Louisiana Revised Statute 26:90(E).   For instance, as described above, subsection 26:90(B)(1) makes reference to the exposure of "any portion of the female breast below the top of the areola . . . ."   Thus, there is

an inconsistency even within section 26:90 about what might constitute the nude breast.  At this stage in litigation, Plaintiffs have demonstrated a likelihood of success on their vagueness challenge.

2. **Threat of Irreparable Harm**

"It is [] well-established that an injury is irreparable only if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (internal citations omitted).  Thus, when a plaintiff's "only alleged harm can be obviated by monetary relief, it does not constitute the 'irreparable' injury necessary to obtain the extraordinary relief of a preliminary injunction." *Id.*  The State argues that Plaintiffs' complaint focuses entirely on the economic ramifications of Act No. 395, and therefore has failed to demonstrate irreparable harm.  (Rec. Doc. 49 at 23-24.)  The State notes that Janes Doe II and III allege their incomes have decreased by more than fifty percent as a result of Act No. 395.  *Id.; (see also* Rec. Doc. 16-1 at 3-5.)  The State acknowledges that Jane Doe I alleges that she "enjoys expressing herself through dancing," but also points out that even Jane Doe I appreciates the flexibility and financial means that erotic dancing provides her. (Rec. Doc. 49 at 24); (*see also* Rec. Doc. 16-1. at 5.)  Accordingly, the State argues that Plaintiffs are more concerned about the

"suppression of their pay check rather than the suppression of their rights guaranteed under the First Amendment." *Id.*

The Supreme Court has expressly stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). There is no dispute here that Plaintiffs challenge Act No. 395 on First Amendment grounds and claim a loss of First Amendment freedoms. Therefore, the question becomes whether Act No. 395 primarily affects Plaintiffs financially or if it inhibits Plaintiffs' First Amendment protections.

The Tenth Circuit considers the "specific character" of the alleged First Amendment violation when determining the appropriateness of a preliminary injunction. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003). In *Heideman*, the Tenth Circuit addressed a motion for preliminary injunction where the plaintiffs challenged the constitutionality of a city ordinance prohibiting dancers in a sexually oriented business from dancing completely nude. *Id.* The *Heideman* court first noted that the Supreme Court has found that requiring dancers to wear G-strings and pasties "is a minimal restriction" upon First Amendment rights. *Id.* (quoting *Pap's A.M.*, 529 U.S. at 301). However, the *Heideman* court observed that "to say that a harm is 'minimal' is not to say that it is nonexistent." *Id.* Because First Amendment

violations are handled "gingerly," the court held that the irreparable harm element "tip[ped] slightly in favor" of the plaintiffs. *Id.; see also Threesome Entm't v. Strittmather*, 4 F. Supp. 2d 710, 716-17 (N.D. Ohio 1998) (holding that the operator of cabaret satisfied the irreparable harm standard when the ordinance prohibited his ability to convey artistic and erotic message through the erotic dancers who worked at the cabaret); *Brownell v. City of Rochester*, 190 F. Supp. 2d 472, 483-84 (W.D.N.Y. 2001) (same result when owners of a sexually oriented business sought preliminary injunction to stop enforcement of an ordinance regulating sexually oriented businesses).

On the other hand, one district court in this Circuit refused to grant a preliminary injunction to enjoin a similar law because it found the plaintiffs were not irreparably harmed. *DFW Vending, Inc. v. Jefferson County, Tex.*, 991 F. Supp. 578 (E.D. Tex. 1998). In that case, Jefferson County, Texas passed an ordinance requiring that nude dancers be separated by at least six feet from patrons, and also prohibited the consumption of alcohol on the premises by nude dancers and other employees at the venues. *Id.* at 586. Although the court acknowledged that the loss of First Amendment rights for even minimal period may constitute irreparable injury, it "doubt[ed] that plaintiffs w[ould] suffer any deprivation of First Amendment rights." *Id.* at 597. Additionally, the court found that the "plaintiffs' arguments reveal the true substance of

38

their battle; economic success . . . ." *Id.* "Because any loss in business or tips is easily measurable and compensable by recovery of damages, and plaintiffs have failed to assert any non-compensable injuries," the court held that the plaintiffs failed to establish irreparable injury. *Id.*

The Court is persuaded by the logic espoused by the Tenth Circuit in *Heideman*. Plaintiffs in the instant suit have alleged a First Amendment violation, which the Court takes seriously. Thus, the threat of irreparable harm requirement has been met.

### 3. Balance of Harms

Plaintiffs have demonstrated that the threatened harm to them outweighs any possible harm to the State. Violation of a constitutional right is a serious harm, and Plaintiffs will be denied First Amendment freedoms if Act No. 395 is enforced. Here, the Court has found that there is a threat Plaintiffs will suffer irreparable harm by the enforcement of Act No. 395. In such a case, the party opposing the injunctive relief must "present powerful evidence of harm to its interests" in order to outweigh the threatened harm. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012). The State here is unable to make such a showing. The State notes that enjoining the enforcement of a statute causes it to "suffer the irreparable harm of denying the public interest in the enforcement of laws." *See Monumental Task Committee, Inc. v. Foxx*, 157 F. Supp. 3d 573,

605 (2016) (quoting *Planned Parenthood of Greater Tex. Surgical Health Servs. V. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013). Nevertheless, Plaintiffs and other eighteen to twenty year-olds in Louisiana stand to suffer a greater harm by the implementation of Act No. 395 because First Amendment rights to free expression are at risk. The State, on the other hand, may utilize other methods to reduce the secondary effects of nude erotic dancing until the Court can fully determine the constitutionality of Act No. 395.

### 4. Public Interest

Finally, Plaintiffs have established that a preliminary injunction will not disserve the public interest. Plaintiffs have demonstrated a likelihood of success on their claim that Act No. 395 violates the First Amendment on overbreadth and vagueness grounds and, therefore, it is appropriate to grant a preliminary injunction. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.3d 535, 539 (5th Cir. 2013). The public interest will be best served by enjoining the effect of Act No. 395 until the Court can conclusively determine whether the Act withstands constitutional scrutiny. *See Wexler v. City of New Orleans*, 267 F. Supp. 2d 559, 568-69 (E.D. La. 2003).

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Juana Marine-Lombard, in her official capacity as Commissioner, Louisiana Office of Alcohol and Tobacco Control, is **ENJOINED** from enforcing or causing any other state actor to enforce Act No. 395 anywhere within the State of Louisiana pending further Order of this Court.

New Orleans, Louisiana, this 8th day of March, 2017.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE